*771 OPINION.
Van Fossan :
The first issue involves the deductibility of payments of the preferred dividends of the Realty Co. made by the petitioner under the guarantee contained in its lease agreement with that company.
The petitioner contends that the payment of such dividends was in performance of its promise incurred in 1916 as a part of the rent consideration and was the primary obligation of the petitioner, with no right of subrogation against anyone.
The respondent’s position is that the expenditure was in the nature of a capital investment enhancing the value of the petitioner’s stock and thus not deductible.
The Realty Co. was organized in 1916 to hold and operate the real estate in which the petitioner’s store was situated. The lease from the Realty Co. to the petitioner contained a clause providing that the petitioner would guarantee the payments of dividends on the preferred stock of the Realty Co. and would redeem such stock upon the liquidation of the Realty Co.
It is clear on examination of the stipulated facts that article 24-2 of Regulations 86[1] (restating the same principle contained in prior regulations), cited by the respondent, does not apply. Petitioner was not a holding company and did not guarantee the dividends for *772 the purposes stated in the article. In fact, the respondent does not attempt to bring the relationship within the language of the regulation. He assumes to make the principle therein set forth generally applicable, regardless of the fact that the petitioner was not a holding company. This position is wholly unwarranted.
The guarantee provision was incorporated in the lease to secure more favorable terms for the petitioner. There was no agreement that the petitioner could have recourse on the Realty Co. for reimbursement if the former paid the dividends. It was an outright promise to pay, not made for the purpose of increasing the value of the petitioner’s stock or of securing new capital.
The terms of the 1916 lease were modified by the .lease agreement covering the taxable year, but the dividend guarantee provision was retained and such dividends, amounting to $36,150.50, were paid by the petitioner. That sum was specifically made a part of the petitioner’s rent and was charged off on the petitioner’s books.
The respondent cites several cases to support his theory, but all of those cases contain such vital differences in facts that it would serve no purpose to discuss them. However, his following quotation from Daniel Gimhel, 36 B. T. A. 539, is pertinent to the case at bar:
There is no general rule that a payment by a shareholder to his corporation or to One of its obligees to relieve it of an existing obligation is per se a contribution by him to its capital which augments the cost of his shares. The question is controlled by the circumstances in which the payment is made. If there is intent that the payment shall enlarge tile stock investment, the Shareholder may not for tax purposes treat it otherwise to support a loss or a bad debt deduction Whether there is such intent, actual or to be implied, is determinable upon evidence which may vary in different cases. Cf. J. S. Maubaules, 20 B. T. A. 359; W. F. Bavinger, 22 B. T. A. 1239.
The following excerpt from the same case is equally apt:
The evidence here is clear. When petitioner madé his payments, both on his endorsements and his guarantees, hé had no illusions about the condition of the corporation and no intention to invest more capital. He paid only because be was legally obligated to do so, and the obligation was not an incident of his being a shareholder but was incurred with the intention of creating a potential debtor ahd creditor relation. To attribute to him an intention to invest more money in the corporation’s shares is contrary to the express evidence and not a fair inference from the circumstances. And it is equally clear that there was no intention to make a gift.
The petitioner’s obligation to pay the preferred dividends of the Realty Co. was originally incurred and continued to exist in 1934 only as a part of its rental. There is nothing in the record that justifies the inference that the guarantee was made for capital purposes.
In Charles B. Holden, 27 B. T. A. 530, the petitioner paid the interest and taxes chargeable to the lessor under his lease of an apart *773 ment. Such expenditures were specifically designated ‘-not as rent.” He sought to deduct them under section 23 (b) and (c) of the Revenue Act of 1928, but there we said:
* * * we think no argument or citation of authority is necessary to support the elemental proposition that, if the circumstances of the case establish that the payments of interest and taxes were made as part of the consideration for the lease of the apartment, then they constituted additional rent, and such fact is not changed and can not be disregarded because of a contrary statement contained in the lease contract between the petitioner and his lessor. However, notwithstanding said statement in the lease contract, we think a fair construction of the provisions of that contract clearly indicates that the interest and taxes paid by the petitioner constituted nothing more nor less than additional rental. * * *
In that case the petitioner did not attempt to show that the payments were deductible as a business expense or “otherwise than interest and taxes.” Here, however, the petitioner does claim that they are deductible as rent and, hence, are an allowable business expense. We agree with the petitioner’s contention and allow the deduction.
The second issue has been settled by stipulation. The sum of $7,429.57, representing insurance premium overpayments, is not taxable to the petitioner.
The third, issue relates to the deductibility of property taxes, amounting to $56,222.08, assessed to the Realty Co. on January 1, 1935, and payable one-half on July 1, 1935, and one-half on October 1, 1935. The respondent concedes that taxes of this character accrue when assessed (H. H. Brown Co.. 8 B. T. A. 112). He states that ordinarily the petitioner, on an accrual basis, would be entitled to deduct the total amount of accrued taxes but places such accrual in the same category as the payment of the guaranteed dividends. He insists that the taxes so paid should be added to the cost of the petitioner’s stock and that the deduction should be denied.
The same reasons for allowing the deduction under the first issue are applicable to the allowance of accrued taxes. Article 23 (a)-10 of Regulations 86 contains the following rule:
* * * Taxes paid by a tenant to or for a landlord for business property are additional rent and constitute a deductible item to the tenant and taxable income to the landlord, the amount of the tax being deductible by the latter. * * *
According to the stipulated facts the taxes were paid as a portion of the rental and the taxes assessed on April 1, 1934, were included in the petitioner’s deductions on its return. 17o objection was made by the respondent to the deduction of the taxes assessed on April 1, 1934, and, therefore, such taxes have been allowed by the respondent. These stipulated facts are inconsistent with the respondent’s present position.
*774 The respondent’s contention can not be sustained. Otherwise, we would be lead to the untenable situation in which the cost of the petitioner’s stock in the Realty Co. would be increased as each successive installment of taxes and other rental equivalent might be paid. The item of $56,222.08, representing taxes accrued on January 1,1935, is deductible from the petitioner’s gross income.

Decision will he entered under Rule 50.

 * * * A holding company which guarantees dividends at a specified rate on the stock of a subsidiary corporation for the purpose of securing new capital for the subsidiary and increasing the value of its stock holdings in the subsidiary may not deduct amounts paid in carrying out this guaranty in computing its net income, but such payments may be added to the cost of its stock in the subsidiary.